BOSTON'S CHILDREN FIRST, Ann F. Walsh, President, Nicholas Anderson, a minor by his parent and next friend, Ellen Dowd, Ellen Dowd, Michael Gattozzi, a minor, by his parents and best friends Joseph Gattozzi, Patrice Gattozzi, John K. O'Toole, Jr., a minor, by his parents and next friends John O'Toole, Sr., Rose O'Toole, Kathleen McCoy, a minor, by her parents and next friends, Carol McCoy, John McCoy, Plaintiffs,

v.

CITY OF BOSTON, Thomas Menino, Mayor of the City of. Boston Thomas Payzant, Superintendent of the Boston Public Schools, Boston School Committee, Elizabeth Reilinger, Dr., Boston School Committee Chairperson, Alfred J. Harris, School, Committee Vice–Chairperson, Felix D. Arroyo, School Committee Member, Robert Gittens, School Committee Member, Susan Naimark, School Committee Member, Marchelle Raynor, School Committee Member, William Spring, School Committee Member, Defendants.

No. 99–11330–NG.

United States District Court, D. Massachusetts.

Nov. 20, 2000.

Chester Darling, Boston, MA, for Plaintiffs.

Frances S. Cohen, Diane diIanni, Hill & Barlow, Merita A. Hopkins, City of Boston Law Department, Boston, MA, for Defendants.

Joel Z. Eigerman, Murtha Cullina Roche Carens & DeGiacomo, Boston, MA, for Interested Parties.

*MEMORANDUM AND ORDER RE:*
*MOTION OF RECUSAL*

GERTNER, District Judge.

## I. *INTRODUCTION*

The plaintiffs seek my recusal in the above-entitled case because of certain public comments I made correcting the misrepresentations of their counsel to the media.

On July 26, 2000, the *Boston Herald* published an article which, in my judgment, was inaccurate in a number of respects. It reported that Chester Darling, attorney for the plaintiffs, had "filed a motion today [July 26] challenging Judge Nancy Gertner's refusal to allow the [Boston School] suit to be expanded to a class action representing all white students who may have been denied school seats because of their race." Indeed, the article quotes Mr. Darling as criticizing the Court because it had even "refused to hear arguments to expand the school suit to a class action." Finally, Mr. Darling is quoted as comparing the Court's treatment of the white plaintiffs in this case with the Court's decision granting class certification to the plaintiffs who claimed that they were illegally strip-searched at the Suffolk County Jail.

Two quotes, reflecting Mr. Darling's indignation, are particularly noteworthy: a) " 'If you get strip-searched in jail, you get more rights than a child who is of the wrong color,' "; and, b) " 'This is like something out of Dickens,' " " 'We're angry.' "

---

1. That order read, in pertinent part (italics supplied):

   The discovery on these issues [standing issues] should be completed as promptly as possible. A summary judgment hearing on the question of the plaintiffs' standing for both damages and injunctive relief will be held on July 27, 2000 at 9:30 a.m.
   If the Court finds that any of the plaintiffs do have standing, *class discovery would be allowed and the Court would schedule a*

On July 28, 2000, I wrote to the *Boston Herald* that the article was inaccurate in a number of respects:

First: Class certification was never ruled on by the Court. The docket entry on June 20, 2000, reflects that the plaintiffs indicated that they would file a motion for class certification "forthwith." They did not do so until the very day that the article appeared.

Second: The motion to which Mr. Darling referred was not yet filed in Court on the date Mr. Darling was interviewed by the press. Rather it was docketed on July 27, 2000.

Third: The Court never refused to hear arguments or to schedule a hearing on class certification. Just the opposite: On June 29, 2000, a procedural order was issued, specifically noting that this Court would schedule a hearing in September with respect to class certification after the issue of standing was resolved.[1] It was the plaintiffs who sought a postponement of the standing hearings, and thus, the issue of class certification.

I concluded my letter to the *Boston Herald* by emphasizing the importance of accurate reporting in this case:

   The issues raised by the Boston School lawsuit are among the most important issues that a court can address. They affect our children and their education. They have an impact on our city and all the communities of which we are a part. While one hopes that a newspaper is careful in all of the issues it covers, surely you would agree that this is an area in which a newspaper must be especially careful.[2]

---

*hearing in September to hear motions with respect to class certification.*

2. The letter concluded with the following paragraph:

   To get the facts wrong so that it appears that the Court is not even allowing argument on important issues, undermines the legitimacy of this institution as well as the purposes your newspaper is supposed to serve. If the goal here is not just to sell

Also enclosed were the relevant docket entries and court orders. The letter was sent to all counsel.

Subsequently, the *Boston Herald* published an article reflecting the facts described in the letter. In addition, when asked about the source of counsel's criticism of the Court, the Court's treatment of plaintiffs in the strip-search case as compared with the Court's treatment of the plaintiffs in this case, I noted that the cases were different, the school case "more complex." My comments in court, in the myriad decisions since the inception of the case, reflected precisely that theme—that the case raised complex questions concerning standing and liability, and that it deserved careful and thoughtful consideration. Indeed, it was precisely because of the complexity of the issues, and their importance, that the Court rejected defendants' motions to dismiss, issued precise procedural orders, made specific findings, and published a number of lengthy decisions.

Plaintiffs do not claim that I have displayed any bias to date. Rather the nub of their argument is that the comments described above create the appearance of partiality.

I DENY the motion [docket entry # 99].

## II. *LEGAL FRAMEWORK*

■ Any judge should disqualify herself from any proceeding in which "her impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test is not whether anyone, with a modicum of knowledge about the case, the judge, or the situation, or having seen only television sound bites or news captions, "might" believe the judge to be partial. Rather, it is whether a reasonable person, knowing "all the circumstances, would harbor doubts about the judge's impartiality." *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136, 140 (1st Cir.1994) (quoting *Home Placement Serv., Inc. v. Providence Journal Co.*, 739 F.2d 671, 675 (1st Cir.1984)).

## III. *APPLICATION TO THE PRESENT CASE*

■ In the instant case, counsel for the plaintiff was quoted as making statements which were not true—that oral argument had been "refused" when it had not yet been scheduled, that a motion for class certification had been filed when it had not,[3] that a decision had been made on it when it was expressly reserved, etc. This is not a case in which a party characterizes a judge's decision, or even lambastes it. It is not about fair criticism of an opinion or an order. It is about misrepresentation.

When a lawyer makes a comment to the press with respect to a pending proceeding that is factually incorrect, a judge has three choices: a) Examine whether the lawyer's comments violated any of the ethical rules with respect to communications with the media; b) correct the record; c) do nothing.

I did not choose to take action against the lawyers involved. Plainly, lawyers are not without their own obligations to be accurate in their dealings with the media, to avoid inflammatory and incorrect com-

---

papers, but also to create a well informed populace, this is not the way to do it.

3. Plaintiffs insist in their recusal motion that they had requested class certification in their complaint. To be sure, the complaint did request class certification but before important issues were raised and addressed, and only in the most general way. At a hearing on June 20, 2000, the Court called for a specific motion for class certification that would be responsive to the issues raised by the defendants and meet the requirements of Rule 23 of the Fed. R. Civ. Pro. As the docket reflected, the plaintiffs indicated that they would file such a motion "forthwith."

In any case, the procedural order of June 29, 2000, expressly outlined the order in which the issues would be litigated—discovery on standing, followed by resolution of the standing issues, followed by discovery on class issues, and then resolution of class issues. There was no doubt that the issue of class certification was yet to be addressed.

ments.[4]  Nevertheless, having been a litigator for twenty-three years, I understand very well the passions of advocacy.  Moreover, I have always been concerned about the over-broad enforcement of rules that constrain lawyer speech.

Nor did I choose to take no action.  As I describe below, the issues involved in this case were too important to allow false and volatile remarks to stand unchallenged.

Rather, I chose to correct the record.  Nothing in the Code of Judicial Conduct suggests that I may not do so.[5]  Quite the contrary, I believe it is my obligation to make certain that people receive accurate information regarding the proceedings over which I preside.  This is especially critical in a case where the claim is racial bias, where a system that was found to have discriminated against black children twenty years ago, now allegedly discriminates against white children.  This Court is not required to turn a blind eye to the issue of race relations in Boston, the history of the original Boston segregation case, and the deep divisions and passions that it engendered.

It is unfortunate when a lawyer misrepresents the record in his or her communication with the media.  But it is profoundly troubling when the comments are inflammatory, when they seek to incite the public's anger and distrust, and undermine the legitimacy of this Court.

This is a public proceeding.  Important issues are at stake—issues about education, race, diversity and fairness.

The public deserves accurate reporting.

4.  A lawyer has an obligation not to make an "extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."  Canon 3.6, Massachusetts Rules of Professional Conduct.  A lawyer also has the obligation to be candid in dealing with third parties, and not to engage in conduct that is prejudicial to the administration of justice.

## IV.  *CONCLUSION*

For the foregoing reasons, the plaintiffs' motion [docket entry # 99] is **DENIED.**
**SO ORDERED.**

Canon 4.1, 8.4, Massachusetts Rules of Professional Conduct.

5.  Canon 3(B)(9) notes: "A judge shall not, while a proceeding is pending ... make any public comment that might reasonably be expected to affect its outcome or impair its fairness ... This Section does not prohibit judges from ... explaining for public information the procedures of the court."