**UNITED STATES of America,**
**Plaintiff,**

v.

**Jorge DE CASTRO–FONT**
**[1], Defendant.**

**Civil No. 08–337 (FAB).**

United States District Court,
D. Puerto Rico.

Nov. 18, 2008.

Lizarribar–Buxo, Lizarribar Masini, Joseph A. Boucher–Martinez, Negron–Garcia, Negron Garcia Law, Juan R. Acevedo–

Cruz, Luis Felipe, Negron–Rodriguez, Quinones, Sanchez & Guzman, PSC, San Juan, PR, for Defendants.

Daniel A. Schwager, Public Integrity, United States Department of Justice, Washington, DC, Ernesto G. Lopez–Soltero, United States Attorneys Office, District of Puerto Rico, San Juan, PR, Jacqueline D. Novas–Debien, US Attorney's Office, District of Puerto Rico, Hato Rey, PR, Timothy R. Henwood, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

BESOSA, District Judge.

On November 3, 2008, defendant Jorge De Castro–Font filed a verified motion pursuant to 28 U.S.C. § 455 requesting that the undersigned recuse himself from this case. (Docket No. 55) The Government opposed defendant De Castro's motion on November 12, 2008. (Docket No. 76) Defendant De Castro replied to the Government's motion on November 15, 2008. (Docket No. 80)

For the reasons expressed below, the Court **DENIES** defendant De Castro's motion for recusal.

## I.

## THE FILING OF THIS CASE: FACTS LEADING TO THE MOTION FOR RECUSAL

Prior to the indictment in this case, the United States requested that the Court approve certain wiretaps and a pen register on telephones which were in the name of defendant De Castro. These requests required the assigned judge to make probable cause determinations on the basis of the evidence provided by the government. The random assignment program employed by the Clerk assigned the "Title III" and other surveillance related requests to the undersigned, who determined that probable cause existed and authorized the requests. The United States then requested that the Court authorize search warrants of defendant De Castro's home and office, and an Esso gasoline station. The Court authorized the search warrants, finding probable cause to do so. Subsequently, the grand jury indicted defendant De Castro on 32 counts relating to corruption by an elected official. The indictment was also randomly assigned to the undersigned.

Among numerous other averments, the indictment alleged acts committed by defendant De Castro involving an individual identified as "Person 4." (Docket No. 3, pp. 17–18) Specifically, the indictment charged that Person 4 contacted the office of defendant De Castro "[i]n or about the summer of 2006, after numerous unsuccessful attempts to secure his wife's renewed nomination for her expired judicial appointment[.]" (*Id.* at p. 17) Person 4 agreed to hold a fund raiser on behalf of defendant De Castro to raise $10,000, in exchange for defendant De Castro's official support for the confirmation of Person 4's wife as a Commonwealth judge. (*Id.*)

The indictment further charged that after the fund raiser, Person 4 personally provided defendant De Castro with two additional cash payments totaling approximately $2,500 in exchange for defendant De Castro's official actions to promote the nomination and confirmation of Person 4's wife. (*Id.* at 18)

Following defendant De Castro's arraignment, the Court held a Status Conference and issued a scheduling order on October 14, 2008. (Docket No. 39) The scheduling order set the trial date in the case for January 12, 2009. (*Id.*) During the Status Conference, counsel for defendant De Castro stated her intention to move for a continuance of the trial date. The Court requested that the motion be

filed in writing. No mention was made at the Status Conference of a motion to recuse the undersigned. Nine days later, on October 23, 2008, defendant De Castro filed the motion requesting that the Court continue the trial date, arguing (1) that one of his two attorneys had a trial in another case that would occupy her time, and (2) that the time allotted until trial was insufficient because the case involved a large amount of discovery. (Docket No. 46) The Court denied defendant De Castro's motion, finding the time between the indictment and the trial date to be reasonable. (Docket No. 52) In its Order, the Court also reminded defendant De Castro's attorneys of their duty to insure that the case was adequately staffed to process the discovery involved in it. (*Id.*) Rather than adding staff to the defense team, one of defendant De Castro's two lawyers of record then requested permission to withdraw as counsel, basing his request to withdraw on his subjective belief that he did not have sufficient time to prepare for trial. (Docket No. 56, paragraph 15)

## II.

## ADDITIONAL FACTS SET FORTH BY DEFENDANT DE CASTRO IN SUPPORT OF HIS REQUEST FOR RECUSAL

We recite the following additional facts as set forth by Defendant De Castro in his motion for recusal.

On October 7, 2004, the undersigned, then an attorney in private practice in Puerto Rico, contributed to a political action committee for the current Resident Commissioner, who was at the time campaigning for that Congressional office. The Resident Commissioner is currently the Governor-elect of Puerto Rico, and the President of the New Progressive Party. The undersigned, while still an attorney in private practice, made a second donation of to the political action committee on February 8, 2006.

In the period between these two contributions, on August 28, 2005, the current Governor, Anibal Acevedo–Vila, nominated the undersigned's wife and others for judgeships in the Commonwealth of Puerto Rico. At that time, defendant De Castro was the Chairman of the Senate Judiciary Committee and also served as Chairman of the Senate Rules and Calendar Commission. On October 6, 2005, the undersigned's wife was unanimously confirmed by the Senate as a judge of the Court of First Instance of Puerto Rico. On the date when the Senate was scheduled to vote on her confirmation, the undersigned, then an attorney in private practice, accompanied his wife to the Capitol, and both were asked by an aide to wait in defendant De Castro's office where they could watch the proceedings on closed circuit TV while the vote took place. At a certain point during the vote, defendant De Castro spoke, praising the undersigned's wife's qualifications. After the vote, defendant De Castro requested a recess to allow the undersigned and his wife to enter the Senate chamber. Prior to and subsequent to the confirmation process, defendant De Castro was quoted in newspaper articles as having made positive comments concerning the undersigned's wife's excellent qualifications to be a judge.

Half a year later, on May 16, 2006, the President nominated the undersigned for the position of United States District Judge for the District Court of Puerto Rico. The United States Senate unanimously confirmed the President's nomination on September 25, 2006. That same day the Resident Commissioner issued a press release stating his satisfaction with the Senate's "quick approval" of the confirmation.

## III.

## THE PERTINENT STATUTES

Defendant De Castro requests the disqualification of the undersigned pursuant to both section 455(a) and section 455(b)(1) of Title 28, United States Code.[1]

Section 455(b)(1) provides for mandatory disqualification when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455(b)(1). Section 455(a), on the other hand, directs "[a]ny justice, judge, or magistrate judge of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) reaches farther than 455(b)(1) because it is not limited to "personal" bias or prejudice "concerning a party" and because it does not require that the movant establish bias or prejudice in fact. *In re Martinez–Catala*, 129 F.3d 213, 220 (1st Cir.1997) (citation omitted).

 Dual, sometimes competing, policies underlie section 455(a). *In re United States*, 666 F.2d 690, 694 (1st Cir.1981). First, "courts must not only be, but must seem to be, free of bias or prejudice." *Id.*

Second, the section is intended to prevent litigants from obtaining "recusal on demand" that would provide them with "a veto against unwanted judges." *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir.2001). In the final balance, compulsory recusal requires "more than subjective fears, unsupported accusations or unfounded surmise." *In re United States*, 158 F.3d 26, 30 (1st Cir.1998). Furthermore, "[t]he trial judge has a duty not to recuse himself or herself if there is no objective basis for recusal." *In re United States*, 441 F.3d 44, 67 (1st Cir.2006) (citations omitted).

 Disqualification under section 455(a) occurs only where a charge of bias is supported by a factual basis and those facts "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *In re Boston's Children First*, 244 F.3d at 167 (quoting *In re United States*, 666 F.2d 690, 695). "While doubts ordinarily ought to be resolved in favor of recusal, the challenged judge enjoys a margin of discretion[.]" *In re United States*, 158 F.3d at 30 (citations omitted). This discretion exists because "in

---

1. As the government notes, defendant De Castro did not move for disqualification of the undersigned pursuant to 28 U.S.C. § 144. That statute provides in part that "whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. The Court will not analyze defendant De Castro's claims pursuant to section 144, not only because defendant De Castro did not expressly invoke the statute, but also because he failed to comply with its procedural aspects (i.e., attaching a certificate of counsel of record or an affidavit by a party stating that the judge has a personal bias or prejudice, etc.). 28 U.S.C. § 144; *see also United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir.1985) ("the statute is to be strictly construed . . . so that a party seeking recusal bears a heavy burden."). Regardless, even if defendant De Castro had invoked section 144 and complied with its procedural requirements, the statute would not require the undersigned to recuse himself immediately. *See United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983) (citations omitted). Instead, he would be required to "pass upon the legal sufficiency" of the affidavit. *United States v. Giorgi*, 840 F.2d 1022, 1035 (1st Cir.1988) (citing *Kelley*, 712 F.2d at 889). Such an analysis would not lead the Court to a different conclusion than that reached in this opinion because sections 144 and 455 have been read *in pari materia*, and they share the same test of legal sufficiency for disqualification. *Kelley*, 712 F.2d at 889.

many cases reasonable deciders may disagree[.]" *In re United States,* 666 F.2d at 695. Each case implicating section 455(a) is *sui generis,* requiring a fact-specific analysis done on a case-by-case basis. *In re Boston's Children First,* 244 F.3d at 171; *In re United States,* 158 F.3d at 31. Ultimately, the question for an appellate court is "not whether it would have decided as did the trial court, but whether that decision cannot be defended as a rational conclusion supported by [a] reasonable reading of the record." *In re United States,* 666 F.2d at 695.

## IV.

### DEFENDANT DE CASTRO'S MOTION IS PRETEXTUAL

 "In general, one must raise the disqualification of the judge at the earliest moment after acquiring knowledge of the relevant facts." *In re Abijoe Realty Corp.,* 943 F.2d 121, 126 (1st Cir.1991) (citations and punctuation omitted). "[A] party, knowing of a ground for requesting disqualification, cannot be permitted to wait and decide whether he likes subsequent treatment that he receives." *Id.* (quoting *In re United Shoe Machinery Corp.,* 276 F.2d 77, 79 (1st Cir.1960)). Defendant De Castro knew of all of the grounds for requesting disqualification (or they were readily available to him) even before the Grand Jury indicted him, but he submitted a motion for recusal only after his motion for continuance of the trial date was denied. The Court will therefore scrutinize the timeliness of defendant De Castro's motion to determine if the motion is purely pretextual. *See In re United States,* 158 F.3d at 34 ("the Court's inquiry into the timeliness of [a party's] recusal motion" is "a proper subject for scrutiny.") (citation omitted)

As previously stated, the grand jury indicted defendant De Castro on October 2, 2008. The case was randomly assigned to the undersigned the very same day. On October 14, 2008 the Court held a Status Conference and issued a scheduling order setting January 12, 2009 as the trial date. At the Status Conference, defendant De Castro's counsel indicated that the trial date should be continued. The Court requested that the motion be filed in writing. No mention was made of a motion for recusal.

Nine days after the Status Conference, on October 23, 2008, defendant De Castro requested that the Court vacate the trial date; the Court treated it as a motion for a continuance. The Court denied defendant De Castro's motion on October 28, 2008. Only after the denial of his motion, on November 3, 2008, one month after the assignment of the case, and six days after his motion to continue the trial was denied, did defendant De Castro file a motion to disqualify the undersigned. Notably, defendant De Castro even mentioned the denial of the motion for continuance as evidence of bias in his disqualification motion. (Docket No. 55, p. 16, n. 8)

More telling still is that all of the factual bases raised by defendant De Castro were known to him, or at the very least readily available to him, prior to or at the time that the case was randomly assigned to the undersigned.[2] Defendant De Castro's

---

**2.** Defendant De Castro made use of language included by the undersigned in his Memorandum and Order dated October 28, 2008, but this language does not provide defendant De Castro with an independent basis for requesting recusal. Defendant De Castro utilized a paragraph from the Order to argue that the undersigned is biased against him because of his alleged political allegiance to the Governor-elect. This argument was already available to defendant De Castro on the basis of the articles quoting the Governor-elect during the recent campaign and on the basis of the publicly available records of contributions made to his campaign for Resident Commissioner in 2004.

choice to wait a month to file his motion for recusal, and to do so only after the denial of his motion to vacate the trial date, suggests that he is attempting to manipulate the course of the proceedings in this case. This understanding of defendant De Castro's actions is supported by the Title III evidence collected by the government and provided to the defense as discovery.

Specifically, the government summarized a phone call that took place between defendant De Castro and his father on August 26, 2008, [after the Search Warrants were executed but more than a month before the defendant De Castro was indicted] as follows:

> Adolfo [defendant De Castro's father] told DCF [defendant De Castro] that Besosa's grandfather was first cousin of DCF's grandfather. Adolfo told DCF that him [sic] and Judge Besosa were second cousins.[3] DCF said Besosa was screwed and added that his lawyer said, "that's the first thing I'm going to bring up if you get accused." DCF said they (feds) were saying that DCF was getting money for nominations. DCF said, if it was true that I charge for nomination, how much did he (Besosa) pay me for confirming his wife, Denise [sic] Martinez Moya? Adolfo said not to say anything against the judge. DCF said he just wants to stir the pot. Adolfo is against that.

Misc. No. 08–94 (FAB), Docket No. 45, Attachment A; *See also* the United States' Opposition (Docket No. 76, p. 7 [timeline]) and defendant De Castro's Reply (Docket No. 80, p. 7, para. 4)

This recorded conversation is direct evidence that defendant De Castro was aware (because his attorney told him) that the first thing to do upon indictment was to seek the undersigned's recusal. He chose to wait, however, until his motion to continue the trial date was denied.

His statement that he "just wants to stir the pot" appears to indicate a desire on his part to manipulate the proceedings, rather than objective knowledge of an actual bias by the undersigned, or objective knowledge that his impartiality might reasonably be questioned. The Court interprets this evidence of defendant De Castro's early intention to raise an allegation of bias as additional evidence suggesting that defendant De Castro filed the motion for improper strategic and pretextual reasons, both because he "want[ed] to stir the pot" and because he did not file the motion until after the denial of his motion for a continuance.

Though case law would support a finding that the recusal motion was not timely filed, defendant De Castro's motion for recusal, even if found to be timely, appears to have been pretextual, motivated primarily by a desire to delay the trial case, given his awareness of the bases cited in the motion even prior to the indictment in this case. *See In re United States,* 441 F.3d at 65 ("courts will reject what appear to be strategic motions to recuse a judge whose rulings have gone against the party.") The recusal motion is nothing more than a pretext.

## V.

## THE PLEADED BASES FOR RECUSAL

In any event, the recusal motion does not provide any factual basis for finding personal bias by the undersigned, that he or his wife have personal knowledge of disputed facts, or that there is an appear-

---

**3.** In fact, it was defendant De Castro's *great*-grandmother who was first cousin to the undersigned's *great*-grandfather, making the relationship one to the 10th degree. *See* 28 U.S.C. § 455(b)(5)(i)

ance of bias. Defendant De Castro raises two separate grounds for recusal: (1) the allegation that the undersigned is an "ally" of the Governor-elect and that the Governor-elect wants to strip defendant De Castro of his seat in the legislature; and (2) the allegation that the undersigned and his wife have knowledge of material facts relevant to this case.[4] Neither ground for recusal is supported by facts that provide a reasonable basis for an objective and knowledgeable member of the public to doubt the judge's impartiality, nor do they provide direct evidence of personal bias held by the undersigned or personal knowledge of disputed evidentiary facts.

### The Undersigned is Not an "Ally" of the Governor-elect

In arguing that the undersigned should disqualify himself because he is an "ally" of the Governor-elect, defendant De Castro relies on three categories of evidence that do not bear the weight that he places upon them. First, in late 2004 and again in early 2006, the undersigned, then an attorney working in private practice, made donations to a political action committee supporting the Governor-elect's Congressional election campaign. Second, defendant De Castro refers to three newspaper articles in which reporters quote the Governor-elect as saying during the recent gubernatorial campaign that he, in his capacity as President of the New Progressive Party, will do everything possible to insure that defendant De Castro does not occupy a senate seat if he were to be elected in November.[5] Third, defendant De Castro quotes a paragraph from the Court's October 28, 2008 Memorandum and Order concerning the public interest in the case and construes that paragraph as evidence of bias against him.

The first category of evidence presented establishes that the undersigned, then an attorney in private practice, made donations to the Governor-elect's congressional election campaign prior to his nomination as the candidate for Governor and nothing more. It does not establish that the two are friends, that they communicate with each other, or that they share a special interest that may be threatening to defendant De Castro. Rather, the most likely inference to draw from the fact that an attorney in private practice made a donation to the election campaign of a person running for public office is that the attorney supports the election of that person in the given election. It may be support for the candidate; it may be support for the candidate's party; or it may be a staunch opposition to a different candidate. Without certain specific corroboratory evidence of bias or preference for the Governor-elect, the simple fact that the undersigned donated to his Congressional campaign some years back when the undersigned was a private attorney and citizen does not raise an improper inference. *See In re Martinez–Catala*, 129 F.3d 213, 221 (1st

**4.** Defendant De Castro included three "causes" for recusal in his motion. The third merely repeats the first two, however, and argues that they should have caused the Judge to recuse himself at the time he was assigned the Title IIIs. To the extent that defendant De Castro relies upon his first two grounds for disqualification in this cause for recusal, the analysis of this cause is no different than that of the first two. *See infra.*

**5.** The Court notes that the articles on which defendant De Castro relies do not belong in a federal court record because they fail to comply with the various rules requiring documents not in English submitted on the record to be accompanied by a *certified* English language translation. Loc.Civ.R. 10(b). The articles relied upon were written in Spanish and the English translations provided do not contain a certification. The Court shall credit the statements attributed to the newspapers, however, because they appear in a verified motion.

Cir.1997) ("*Former* affiliations with a party may persuade a judge not to sit; but they are rarely a basis for compelled recusal.") (emphasis in original); *In re United States*, 666 F.2d at 696–97; *cf. In the Matter of Bradford Mason*, 916 F.2d 384, 387 (7th Cir.1990) ("There are not enough political eunuches on the federal bench to resolve all cases with political implications; anyway it would be weird to assign all political cases to the naifs while concentrating antitrust and securities cases in the hands of the political sophisticates.... Reasonable, well-informed observers of the federal judiciary understand that judges with political friends or supporters regularly cast partisan interests aside and resolve cases on the facts and the law. Judges with tenure need not toady, and don't.")

The two additional categories of evidence provided by defendant De Castro, do not provide the necessary corroboration, either.

Defendant De Castro construes the second category of evidence, the newspaper articles quoting the Governor-elect, as suggestive of his ill-will towards defendant De Castro. He then combines that inference with a strained reading of the third category of evidence, the Court's October 28, 2008 Memorandum and Order, to arrive at the conclusion that the undersigned is attempting to "aid [the Governor-elect] in getting Senator De Castro–Font out of the way[.]" (Docket No. 55, p. 8) There are several problems with defendant De Castro's conclusions based on the newspaper articles and the Court's October 28, 2008 Memorandum and Order, not the least of which is the hyperbole he uses. To begin with, under Article III, Section 9 of the Puerto Rico Constitution, each Chamber of the Legislative Assembly is the only judge of the legal capacity of its members. P.R. CONST. art. III, § 9. Under the same section, a legislator may be expelled with the vote of three quarters of the legislative chamber. *Id.; see generally Nicolas Nogueras Cartagena v. Roberto Rexach Benitez*, 141 D.P.R. 470 (1996) *Jesus Santa Aponte v. Hector M. Hernandez*, 105 D.P.R. 750 (1977). That is to say, the Senate will decide whether defendant De Castro is to be expelled from its body, not this Court. Thus, it is entirely reasonable for an objective and well-informed reasonable person to understand that the Governor-elect's public comments relate to actions that will be taken in the Senate, not by this Court.

The suggestion that somehow the undersigned latched onto those public remarks and incorporated them in the October 28 Order strains credulity and is an overreaching interpretation of the Order. To paraphrase, the relevant paragraph of the Court's October 28 Order stated that defendant De Castro was charged with corruption, noted the date when he would take his new oath of office if elected, and asserted that public corruption, prevalent in Puerto Rico, must be addressed efficiently. (Docket No. 52) Defendant De Castro understood this paragraph to mean that the Court "already convicted Senator De Castro–Font of [corruption.]" (Docket No. 55, p. 8) There is no basis for defendant De Castro's statement. The opinion neither stated nor implied any such thing.

The public interest, the topic of the contested paragraph, is in an efficient resolution of the charges against defendant De Castro in a just manner, not in a particular outcome. An efficient resolution of the case by a jury is in the interest of the public and in defendant De Castro's interest, also. If the jury finds defendant De Castro not guilty, then he will clear his name and perhaps continue to work as a Senator without the "Sword of Damocles" of a federal indictment hanging over his head. The public will also have reason to

believe that defendant De Castro is representing the best interest of the people, rather than his own financial best interests, as is charged in the indictment. On the other hand, if defendant De Castro is found guilty by the jury, then he may no longer be in a position to abuse the public's goodwill, as is alleged in the indictment. A speedy trial is a blessing to a defendant, not a curse.

### Knowledge of Facts in the Case

 The third category of evidence (the undersigned's knowledge of facts in the case) fails to provide what a reasonable person would consider the appearance of a bias or lack of impartiality. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"). Instead, it stands on its own as a legitimate, neutral rationale for not delaying trial in this case beyond a reasonable time for defendant De Castro to prepare his defense. Defendant De Castro's attempt to use innuendo and vague similarities between what is indicated in the October 28 Order and the undersigned's knowledge of the facts of the case to draw the conclusion that the undersigned and the Governor-elect are "allies" is not unlike his attempt to raise an appearance of impropriety by alleging that the undersigned and his wife have knowledge of material facts relevant to his defense; both are based upon unfounded surmise.

Defendant De Castro's assertion that the undersigned and his wife, a Commonwealth Judge, have personal knowledge of disputed evidentiary facts concerning the case rests on count 25 of the indictment. That count involves the allegation that Person 4 (as identified in the indictment) paid defendant De Castro to ensure the

appointment of Person 4's wife as a Commonwealth Judge. Defendant De Castro adds additional irrelevant details such as that he was quoted in the press as having made laudatory comments concerning the undersigned's wife's qualifications to be a judge. He also adds that the undersigned, while an attorney in private practice, sat in defendant De Castro's office at the Senate with his wife while her confirmation vote was in progress. Ultimately, he says that both the undersigned and his wife know if defendant De Castro asked them for some kind of payment in exchange for his role in supporting the confirmation of the undersigned's wife as a Commonwealth Judge. This information, however, cannot be relevant or material to the case.

None of the allegations in this case relates to the undersigned, his wife or to any other judicial appointment that occurred under defendant De Castro's watch other than the one referenced in the indictment.[6] Moreover, the indictment does not allege a pattern of behavior in which defendant De Castro took money to confirm judicial appointees; the indictment only contains the allegation that he took money to facilitate the Senate's confirmation in regards to one candidate nominated to be a judge.

There is no reason to believe that the undersigned or his wife have "personal" knowledge of any evidence that would contradict what is alleged in the indictment or impeach any Government witness whose testimony would support the allegations in Count 25 of the indictment, and defendant De Castro provides none. The fact that defendant De Castro was the Chairman of the Senate's Judiciary Committee does not create the appearance of a lack of impartiality on the part of the undersigned. Of the many nominations for judgeship that

---

**6.** Defendant De Castro knows the identity of the Judge referenced in the indictment.

(Docket No. 72)

occurred during defendant De Castro's watch, only one is the subject of the indictment. There is no allegation in the indictment that any other candidate for judgeship made payments to defendant De Castro or that he solicited payments to assure their confirmation. Accordingly, defendant De Castro's second ground for seeking recusal does not provide a reasonable basis for questioning the judge's impartiality.[7]

## VI.

## TWO OTHER MATTERS

Two additional items merit review, if only briefly: (1) the propriety of the undersigned hearing the case after authorizing the wiretaps and search warrants; and (2) the familial relation between the undersigned and defendant De Castro. Both issues are "straw men," but the Court will address them in disposing of defendant De Castro's recusal motion.[8]

### Familiarity with the Facts Prior to the Indictment

▆ The First Circuit Court of Appeals has already definitively dealt with the first issue: a judge need not disqualify himself or herself for having some familiarity with a case gained from authorizing wiretaps and search warrants. *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 490–91 (1st Cir.1989) ("Our system of justice does not require that judges be empty vessels, wholly ignorant of all of the antecedents of a case."); *Giorgi,* 840 F.2d at 1034–35; *Kelley,* 712 F.2d at 889 ("Facts learned by a judge while acting in his judicial capacity cannot serve as a basis for disqualification on account of personal bias."); *cf. Liteky,* 510 U.S. at 555, 114 S.Ct. 1147 ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.")

### Family Relationship

▆ As for the second item, the record fails to show just how distantly related the judge is to defendant De Castro; suffice it to say, however, that defendant De Castro recognizes that it falls outside of the degree requiring disqualification. *See* 28 U.S.C. § 455(b)(5)(i) (disqualifying a judge if, among other reasons, a party to the proceeding is within the third degree of relationship to him or her), *but see* footnote 4, *supra.* Had Congress thought that a more distant degree of relationship raised an appearance of partial-

---

**7.** Defendant De Castro attempts to limit this issue to female judges and their husbands. (Reply, Docket No. 80, pp. 6–7)

**8.** A liberal reading of defendant De Castro's self-identified third basis for recusal might identify both issues as additional grounds for requesting disqualification. (See Docket No. 55, pp. 13–14) As mentioned above, defendant De Castro's third "cause for recusal" realleges his first two causes in the context of the pre-indictment determinations made by the judge. Although defendant De Castro did not specifically identify the knowledge gained or a possible bias formed by the undersigned resulting from his involvement in the pre-indictment determinations as a basis for recusal, the Court believes it prudent to address the issue nonetheless. Additionally, defendant De Castro included within this section of his brief one sentence in which he highlighted that he "is related to Judge Besosa, although not within the degrees [sic] required for automatic disqualification." (Docket No. 55, p. 13) Defendant De Castro's statement under penalty of perjury also included the following sentence: "I am related to Judge Besosa, although my attorney has explained that the family relation is not within the degrees [sic] required for disqualification as a judge. during [sic] the years when we met we always called ourselves cousins and I have considered him a family member." (Docket No. 55, p. 1)

ity then it would have extended the prohibition in 28 U.S.C. § 455(b)(5)(i) to people more distantly related to a judge than it did. Because defendant De Castro and a 10th degree of relationship do not fall within the ambit of degree of relationship to a judge prohibited by Congress, the Court finds that defendant De Castro's one-line allegation of a familial connection fails to provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the undersigned's impartiality. Moreover, defendant De Castro failed to explain, in objective terms, the degree of relationship between himself and the undersigned. *See* footnote 4, *supra.* Therefore, the Court also finds that his allegation of a familial relationship lacks a sufficient factual basis for recusal. Indeed, defendant De Castro admits it.

## VII.

### CONCLUSION

For the reasons stated above, the Court **DENIES** defendant De Castro's motion for recusal.

**IT IS SO ORDERED.**