**METROPOLITAN OPERA
ASSOCIATION, INC.,**
Plaintiff,

v.

**LOCAL 100, HOTEL EMPLOYEES
AND RESTAURANT EMPLOYEES
INTERNATIONAL UNION, et al., Defendants.**

**No. 00 CIV. 3613(LAP).**

United States District Court,
S.D. New York.

Aug. 27, 2004.

---

Cohen Lans LLP (Deborah E. Lans, Esq., of Counsel), New York City, Stillman & Freidman, PC (Charles A. Stillman, Esq., Catharine Easterly, Esq., Sharon E. Grubin, Esq., General Counsel, Metropolitan Opera, of Counsel), New York City, for Plaintiff Metropolitan Opera Association, Inc.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C. (Elkan Abramowitz, Esq., Jonathan S. Sack, Esq., Elizabeth Small, Esq., of Counsel), New York City, for the firm of Herrick, Feinstein LLP.

Levy, Ratner & Behroozi, P.C. (Daniel Engelstein, Esq., Adam Rynard, Esq., of Counsel), New York City, for Defendant Local 100, Here International Union.

Hogan & Hartson, LLP (Steven M. Edwards, Esq., of Counsel), New York City, for Davis, Cowell & Bowe, LLP.

Herrick, Feinstein LLP (James A. Moss, Esq., Marianne Yen, Esq., of Counsel), New York City, for Defendants Henry Tamarin and Dennis Diaz.

## MEMORANDUM OPINION AND ORDER

PRESKA, District Judge.

Defendants Local 100, Henry Tamarin and Dennis Diaz, and the law firms Her-

rick, Feinstein LLP and Davis, Cowell & Bowe LLP (collectively, "movants") have moved to disqualify this Court from presiding in this action. For the reasons set out below, the motion is denied.

## I. Background

On January 28, 2003, this Court issued a lengthy opinion granting plaintiff's motion for judgment against defendants on liability and awarding of attorneys' fees and other costs against the defendants and their counsel based on various discovery failures that "transcended the hurly-burly [of the discovery process in a hotly-contested civil case] into gross negligence, recklessness, willfulness and lying." *Metropolitan Opera, Ass'n Inc. v. Local 100, Hotel Employees & Restaurant Employees' Int'l Union*, 212 F.R.D. 178, 182 (S.D.N.Y.2003) (the "Opinion"). Familiarity with the Opinion is assumed.

On February 10, 2003, a conference was held with all counsel to discuss the steps necessary to resolve the action. At that conference, several new counsel appeared in addition to prior counsel to the parties. (*See* Declaration of Deborah E. Lans executed February 19, 2004 ("Lans Decl."), Ex. 7 (transcript of February 10, 2003 pre-motion conference indicating sanctions counsel for the Herrick Feinstein firm, for the Davis Cowell firm and for the Union (p. 1) and counsel's comment that "we have now two and perhaps three different sets of attorneys" (pp. 9–10)).) Movants informed the Court that they needed additional time to determine whether they had grounds to move for reconsideration of the Opinion before proceeding to determinations of the amount of attorneys' fees and damages owed. (*E.g., id.* at 3–4, 14.) At that conference, in response to one of defendants' counsel's mentioning as a possible basis for reconsideration a legal argument not raised on the underlying motion,

the Court reminded defendants that a motion to "[r]econsider is not a do over. I am not saying you can't make the [reconsideration] motion if it's timely, but it's not a do over." (*See id.* at 9; *see also id.* at 10 ("I am … distressed to hear what sounds like a do-over suggestion.").) Defendants' counsel agreed with the Court's statement of the law but stated that they needed time "to look into" whether an argument concerning the First Amendment that concededly had not been raised in opposition to the sanctions motion was (a) a proper argument and (b) an argument that might not be waivable. (*Id.* at 14–15.) On March 3, 2003, movants filed motions for reconsideration, which remain pending.

On September 26, 2003, I gave a presentation (the "Presentation") entitled "How a Judge Expects You To Handle Electronic Records in Discovery" as part of a two-day continuing legal education program held by the Bureau of National Affairs ("BNA") in Washington, D.C., on the topic of electronic discovery and how technological advances might affect discovery obligations (the "BNA seminar"). (*See* Declaration of Paul H. Schafhauser dated October 15, 2003 ("Schafhauser Decl."), Ex. A (the "Advertisement").) The Advertisement noted that I had authored the Opinion "which handed down a judgment in favor of the plaintiffs [sic] after citing the defendant's [sic] mishandling of electronic evidence." (*Id.*) The Presentation began with a summary of selected discovery failures set out in the Opinion, (*see, e.g.,* Schafhauser Decl., Ex. C ("BNA Newsletter"); Lans Decl., Ex. 5 (the "Metropolitan Corporate Counsel Newsletter")), and proceeded to recommend to the audience (which consisted mostly of lawyers) steps to take to avoid these and other pitfalls in electronic discovery, including steps that echoed findings in the Opinion. (*E.g.,* "The lessons attorneys should take from Metropolitan Opera is [sic] that during the

process of discovery involving electronic data, counsel needs to 'stop and think,' to ensure that obligations are being fulfilled." (Metropolitan Corporate Counsel Newsletter at 2 (quoting Opinion at 224)).) Brief comment was made about the technique employed on the sanctions motion, including lessons for counsel. (*E.g.*, "counsel should follow up on each discovery request that is unfulfilled to build a record of the opponent's non-compliance." Schafhauser Decl. Ex. B.) The Presentation concluded with a procedural update on the case, including that a motion for reconsideration was pending, and questions from the audience.

By notice of motion dated October 15, 2003, movants sought disqualification under 28 U.S.C. § 455(a) and Canon 3A(6) on the basis that the Presentation created an appearance of partiality such that the Court must disqualify itself from further proceedings in this case.

## II.   Discussion

### A.   The Law

■ The applicable law is not in much doubt. Under 28 U.S.C. § 455(a), a district judge shall recuse himself where "his impartiality might reasonably be questioned." "Disqualification under section 455(a) requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" *United States v. Lauersen*, 348 F.3d 329, 334 (2d Cir.2003) (citation omitted); *see also In re Aguinda*, 241 F.3d 194, 201 (2d Cir.2001); *In re Int'l Bus. Mach. Corp.*, 45 F.3d 641, 643 (2d Cir.1995); *Apple v. Jewish Hosp. and Med. Ctr.*, 829 F.2d 326, 333 (2d Cir.1987). "Movants must overcome a presumption of impartiality, and the burden for doing so is 'substantial.'" *Giladi v. Strauch*, 94 Civ. 3976, 1996 WL 18840, at *1, 1996 U.S.

Dist. LEXIS 405, at *4 (S.D.N.Y. Jan. 18, 1996) (citing *Farkas v. Ellis*, 768 F.Supp. 476, 478 (S.D.N.Y.1991)).

■ The decision to grant or deny a recusal motion is committed to the sound discretion of the judge to whom the motion is directed. *See In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988), *reh'g denied*, 869 F.2d 116 (2d Cir.1989). A judge must "carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *Drexel*, 861 F.2d at 1312. Indeed, the public interest mandates that judges not be intimidated out of an abundance of caution into granting disqualification motions: "A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may create the [appearance] of bias," and " '[a] timid judge, like a biased judge, is intrinsically a lawless judge.'" *Int'l Bus. Mach.*, 618 F.2d at 929 (quoting *Wilkerson v. McCarthy*, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1949)(Frankfurter, J., concurring)). Finally, "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *Drexel*, 861 F.2d at 1312; *see also Aguinda*, 241 F.3d at 201 ("[W]here the standards governing disqualification have not been met, recusal is not optional; rather, it is prohibited."); *McCann v. Communications Design Corp.*, 775 F.Supp. 1506, 1533 (D.Conn. 1991) (grant of an unfounded motion would "undermine public confidence in the judiciary, for the judiciary would appear [clearly] manipulated . . .").

The only possible disagreement the parties have as to the law involves the Code of Conduct for United States Judges (the "Code"). Movants rely on Canon 3A(6) of

the Code in their moving papers, but the opposition papers note, without contradiction on reply, that "[t]he Code of Conduct contains no enforcement mechanism. The Canons, including the one that requires a judge to disqualify himself in certain circumstances are self-enforcing." *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C.Cir.2001)(internal citations omitted). The only remedies for violation of the Code are the institution of a disciplinary complaint or a motion to disqualify pursuant to 28 U.S.C. §§ 144 or 445. *Id.* Further, even the finding of a violation of Canon 3(A)(6) would not require a conclusion that disqualification is appropriate under § 445(a). *See, e.g., United States v. Fortier*, 242 F.3d 1224, 1229–30 (10th Cir. 2001) (judge's public comment concerning a pending action could violate Canon 3(A)(6) of the Code without creating the appearance of bias necessary for recusal pursuant to § 455(a)). Accordingly, the Code will not be treated separately.[1]

B. Application

It is in the application of the law to the facts that the parties seriously diverge. Tactically, movants have extracted a line or a phrase from various cases and applied it by *ipse dixit* to isolated words or phrases in the Presentation, violating the holdings of the cases and ignoring the substance and context of the Presentation.

As to the former, for example, movants pronounce *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36 (4th Cir.1995), to be "strikingly similar" to the present case. (Br. at 7.)[2] They note that the district court there had entered a default judgment against the defendant for discovery abuse and that "[w]hile a jury trial was pending on the issue of damages, the judge made blunt remarks at a tort seminar that were pointedly hostile toward defendants and defense counsel." (*Id.*) Noting that the Fourth Circuit ordered disqualification of the trial judge because his comments "reflect a predisposition against Navistar and other liability defendants," movants argue that the same result is mandated here. The only similarity between *Hathcock* and this case, however, is the post-default, pre-damages determination posture. Movants nowhere discuss the substance of the *Hathcock* court's remarks—characterized by the Fourth Circuit as inflammatorily calling defendants "son-of-a-bitches," calling pro-plaintiff decisions "great" and referring to "habitual defendants." 53 F.3d at 39. As will be noted in the discussion below, the remarks at issue here are in no way similar to those rather striking comments. Movants also fail to note that recusal was ordered in *Hathcock*

---

1. Although movants rely on Canon 3A(6) of the Code as a basis for the motion, they wait to the reply to mention that the same Canon excepts from the proscription against public comment on pending cases "scholarly presentation[s] made for the purpose of legal education." The Presentation was clearly within this exception, both as advertised (Schafhauser Decl., Ex. A (Advertisement: "How a Judge Expects You To Handle Electronic Records in Discovery")) and as delivered, (Lans Decl., Ex. 5 (Metropolitan Corporate Counsel Newsletter at 2 ("Attorneys can glean several practical pointers from the conduct of the parties in Metropolitan Opera and other cases . . ."; "[d]rawing specifically on the failings on display in Metropolitan Opera, Judge Preska emphasized that lawyers should . . ."; "[t]he lesson attorneys should take from Metropolitan Opera is that during the process of discovery involving electronic data, counsel needs to 'stop and think' to ensure that obligations are being fulfilled")); Lans Decl. at 4 n. 4. ("[those are] the suggestions I have" and reference to the findings in the Opinion as "examples from which to learn,")).

2. Reference is to the "Memorandum of Law in Support of Joint Motion to Disqualify" dated October 15, 2003.

based on the judge's cumulative behavior, including having "ex parte contacts requesting that [plaintiff's] counsel draft at least the factual basis of a default order, and possibly its legal conclusions as well," to which defendant "was never given an opportunity to respond." *Id.* at 41.

As to movants' latter tactic, ignoring the substance of the Presentation, there is no disagreement that judges ought not comment on the merits of pending matters. Movants' argument that the Presentation was a comment on the merits of a pending matter, however, ignores the substance and context of the Presentation. No comment or implication as to the merits was made. As will be discussed in more detail below, using a finding in an issued opinion to suggest to lawyers how to avoid such a finding in the future is not a comment on the merits of the case. Even if the specific finding were reversed on reconsideration or appeal, the pedigogical purpose is still served. Noting that a motion for reconsideration is pending and an already-lengthy draft is in progress is not a comment on the merits of the case or a preview of the outcome of the motion. *Compare United States v. Cooley,* 1 F.3d 985 (10th Cir. 1993)(where the court had issued injunctions against certain highly publicized anti-abortion activities. After announcing their intentions, the protesters violated the injunctions, leading to prosecutions before the same district court judge. Recusal was ordered on the basis of the district judge's repeated appearances on national television to discuss the protests, his emphatic public statements that the protesters were breaking the law and his statements that he would uphold his injunction in the pending case.). The result urged by movants, based on out-of-context, sometimes incorrectly juxtaposed remarks compared to isolated phrases from the cases, does not withstand analysis. At bottom, the law does not support and, indeed, prohibits recusal here.

Movants base their motion on three types of alleged statements in the Presentation which, they claim, could lead a reasonable, objective observer to question the Court's impartiality: (1) statements which convey a personal involvement in the subject matter; (2) statements of factual findings which defendants contest in their pending motions for reconsideration; and (3) statements that preview a ruling on the pending motions for reconsideration.

### 1. Personal involvement

■ Movants argue that a few phrases in the course of the Presentation are indicative of my "personal involvement" or "emotional commitment to one side of the dispute." First, movants object to my recounting the finding in the Opinion that the Union had "junked" some of its computers without notice to Met counsel (after the Met had announced that it might seek a forensic examination of those computers to retrieve supposedly deleted emails) and identifying this instance, at the end of a list of selected discovery failures noted in the Opinion, as "one of my personal favorites." The fact that I used the colloquial term "junked" instead of the word "dismantled," used in the Opinion, is hardly a basis for recusal. Indeed, Mr. Schafhauser, movants' note taker/surreptitious tape recorder at the Presentation, wrote down "discarded" instead of "junked" in his notes, demonstrating that he, at least, thought nothing of the use of the colloquial term "junked."

Movants also quibble with the use of the word "junked" on the ground that the reconsideration motion argues that the computers were not physically discarded but, according to the Union's office manager, merely disconnected and put in a closet (which exact closet she cannot recall). Al-

though the fact that a motion for reconsideration is pending was noted in the Presentation, no attempt was made to note each (or even any) of the bases therefore. (Indeed, to do so would have taken as much time as the entire Presentation.) Moreover, nowhere in any of the papers in the case do defendants ever suggest that the computers—wherever they might be— are or, at the relevant time, were available for data download and production. Thus, whether the computers were "discarded" to a closet or "junked" to a garbage heap is inconsequential for discovery purposes and, thus, inconsequential to an objective disinterested observer fully informed of the underlying facts. *See Lauersen,* 348 F.3d at 334.[3]

That this finding in the Opinion was said to be "one of my personal favorites" was intended to convey its particular clarity as a pedagogical device in the context of electronic discovery. In contrast to the other, more complicated findings in the Opinion, (*e.g.,* "no lawyer ever doubled back to inquire of the Union employee in charge of document production whether he conducted a search and what steps he took to assure complete production," (Opinion at 181–82)), this was a simple finding particularly applicable to electronic discovery: in a case where the production of electronic data was hotly litigated, one side raised the possibility of its seeking a forensic examination of the opponent's computers, and the opponent, without notice and without further communication with counsel or

the Court, dismantled those same computers—an action that I understand adversely affects the ability to retrieve data from such computers. Whether or not my subjective pedagogical intent was successfully conveyed, the remarks complained of could not be interpreted by the objective disinterested observer as conveying the level of personal involvement required for recusal. *Compare Cooley,* 1 F.3d at 995.

Second, defendants object in their brief to remarks "conveying that an opinion scathingly critical of one side of a dispute was 'fun [to read]' and would 'amuse' the audience." (Br. at 6.). Although the words "fun" and "amuse" were used in the Presentation, there is no evidence in the record that those words were used in the context argued by movants (and they were not). As set out in Mr. Schafhauser's Declaration, "fun" was used in noting that the then-extant 40-page draft of the decision on reconsideration was "not as much fun as the underlying [O]pinion," (*see* Schafhauser Decl. ¶ 8), and stated the universal truism that motions for reconsideration are less stimulating, or in the vernacular, less fun, than the underlying opinions. To the extent that movants object to the procedural information that there was in process a draft opinion and that it was then 40 pages, such information is entirely neutral, not related to the merits and not a preview of the outcome. If anything, the existence of a lengthy draft denotes serious consideration of the reconsideration motion.

---

**3.** Movants also complain about the statement in the Presentation that "[n]o one knew that [the Union's] PC's dumped information after 30 days," (*see* Schafhauser Decl. ¶ 6), but nowhere explain the basis of that complaint. Although Mr. Schafhauser juxtaposes this statement with the "junked" statement in his Declaration (without actually saying that they were in any way related to each other in the Presentation), in fact, the two statements were unrelated, both temporally and substan-

tively, in the Presentation. In the Presentation, the undisputed fact that the Union's PCs deleted data after 30 days was used to illustrate the necessity for counsel to inquire immediately about how a client's information is stored (and discarded) rather than delaying until data has been lost. This finding was used to illustrate a different lesson from the lesson illustrated by the junked computers finding.

As also set out in the Schafhauser Declaration, the word "amuse" was used in telling the lawyers: "if you do wish to be amused but not overly burdened, the first three or four pages [of the Opinion] really is an effort to explain why this case is different." (*Id.* ¶ 12.) Counsel would be amused, in my view, by the words used to characterize certain, unfortunately ordinary, litigation tactics. (*See* Opinion at 181 ("Because I came to the bench from private civil practice, I am familiar with the hurly-burly of the discovery process in a hotly-contested civil case, with the existence of sharp elbows, speaking objections, rude responses and with the ever-popular, much-cited Rambo litigation tactics. I am certainly familiar, both from practice and from my time on the bench, with discovery disputes that devolve into arguments about which child threw the first spitball.").) Aside from the fact that movants' characterizations of the comments in their brief differs from the renditions in their declaration, neither of these comments is remotely sufficient for a reasonable, objective observer to infer an inappropriate degree of personal involvement or emotional commitment to one side of the dispute.[4]

### 2. Factual Findings

■ As noted above, the Presentation began with a summary of selected findings in the Opinion relevant to the seminar topic. Movants do not suggest that the summary inaccurately reported what the Opinion stated but object because certain of the findings recited detail "failings" of defendants and their counsel and because some of those findings are challenged in the motion for reconsideration. First, the finding that certain actions (or inactions) constituted failings by defendants and their counsel was the very basis of the Opinion. Indeed, the Opinion characterized the conduct by defendants or their counsel as "failed" or a "failure" some 68 times. (*See* Lans Decl. ¶ 8(d) and Ex. 6.) The Supreme Court has held that judicial rulings and the opinions formed by judges on the basis of facts introduced in the course of proceedings "almost never constitute a valid basis for a bias or partiality motion ... unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also Ford v. Suffolk County,* 133 F.Supp.2d 116, 120–21 (D.Mass.2001) (comments to newspaper that summarized published opinion were not a basis for recusal); *Meng v. Schwartz,* 97 F.Supp.2d 56, 59 (D.D.C.2000) ("[S]trongly stated judicial views rooted in the record should not be confused with judicial bias.") (citation and quotation marks omitted). Movants do not discuss *Liteky* or explain why its rule should not be followed here.

Second, as noted above, the audience was informed that a reconsideration motion was pending. Movants nowhere explain why a reasonable observer would assume from this summary of findings from the Opinion, recited for the stated purpose of advising counsel how to avoid similar failures in the future, that the Court could not decide the pending motion for reconsideration in an impartial manner any more than he or she would make that assumption from merely reading the Opinion. Accordingly, the summary of factual findings from the Opinion, used as a springboard in the Presentation to discuss "best practices" in electronic discovery to avoid such findings, is insufficient to re-

---

**4.** I note in passing, without relying on such materials, that of the audience members who replied to plaintiff's counsel's inquiry, not one found the comments to indicate any sort of bias or appearance of impartiality. (*See* Lans Decl., ¶¶ 10–11 Ex. 8.)

quire recusal, even when a motion to reconsider was pending.

### 3. Preview of Ruling

■ Movants object to the comment that "following the decision ... there was a proliferation of counsel because everybody had new counsel, sanctions counsel, merits counsel, blah, blah, blah, the request was made to make a motion to reconsider" and the comment, with respect to a reconsideration motion, "it's not a do over, you don't get a do over." Defendants assert that these comments preview the Court's decision on the motions for reconsideration. No reasonable observer would come to this conclusion. The first comment noting the proliferation of counsel is a neutral, factually accurate reflection of the procedural steps leading to the reconsideration motion and, indeed, echoes defense counsel's comment at the February 10 conference that "we now have two and perhaps three different sets of attorneys." (Lans Decl., Ex. 7 at 9–10.) How that undisputed, wholly neutral, non-merits fact previews a ruling on the reconsideration motion remains unexplained by movants and is beyond me. The second comment, that reconsideration is not a "do-over," is a plain statement of the law, albeit in the vernacular, nearly identical to the statement made directly to counsel at the February 10, 2003 conference and with which movants' counsel agreed. (*See* Lans Decl., Ex. 7 at 9, 10.) Movants nowhere explain why the accurate statement that reconsideration is not a "do-over" in any way previews a ruling on matters that are a proper basis for reconsideration, i.e., "matters or controlling decisions which counsel believes the court has overlooked" on the underlying motion. (*See* Local Civil

Rule 6.3.) Defendants' assertions, therefore, amount to nothing more than speculation about future rulings. Such speculation is an insufficient basis for recusal.

Defendants next object to the information that the then-extant draft of the reconsideration motion was some 40 pages. Citing *United States v. Microsoft*, 253 F.3d 34 (D.C.Cir.2001), movants argue that "[b]y publicly discussing... the pending reconsideration motion with the BNA audience, the Court has engaged in ex parte communication that not only could influence the outcome of the case, but could do so in a manner that is not part of the record." (Reply Br. at 2.) [5] Movants nowhere explain, however, how the statements that a motion for reconsideration was pending, that that motion was less fun (or less interesting) than the underlying motion and that the current draft of the decision was some 40 pages could "influence the outcome of the case." (Indeed, movants would undoubtedly have protested more loudly if there had been no mention of the reconsideration motion or if it did not receive serious (i.e., at least 40 pages worth of) attention.) Also unexplained is how these facts are in any way comparable to the facts in *Microsoft* where, before rendering a decision in a bench trial, the trial judge held several secret meetings with reporters where he discussed the merits of the case, including his views on the evidence (the judge allegedly "likened Microsoft's writing of incriminating documents to drug traffickers who 'never figure out that they shouldn't be saying certain things on the phone,'" 225 F.3d at 110), the law (as to the remedy, the judge allegedly told reporters that "he was 'not aware of any case authority that says [he] ha[s] to give [Microsoft] any due pro-

---

**5.** Reference is to the "Reply Memorandum of Law in Support of Motion to Disqualify" dated March 29, 2004.

cess at all,' " *id.* at 111), and the credibility of witnesses (the judge allegedly told reporters "that Bill Gates' 'testimony is inherently without credibility,' " *id.* at 109).

Movants also cite *Microsoft*, as well as *In re Boston's Children First*, 244 F.3d 164 (1st Cir.2001), to argue that "[b]y publicly previewing a decision that had been drafted but not finalized or issued the Court has undermined the integrity of the process and provided non-parties with information that parties do not have." (Reply Br. at 2.) Again, movants nowhere explain (1) how the neutral fact that a decision on a motion was in process and was then 40 pages previews how the decision will come out, or (2) how disclosure of those facts "undermines the integrity of the process." The cases cited do not assist in the explanation because, as noted above as to *Microsoft*, they are factually so dissimilar. As to *Boston's Children*, movants point to the court's comment to the press there that a pending case was "more complex" than a previous case and note that even such "seemingly innocuous" comments mandate disqualification. (Reply Br. at 4.) Citing *Boston's Children* without more is, charitably, overly aggressive. It was a high profile case involving a challenge to public school assignments in Boston. Plaintiffs' counsel's comments criticizing the presiding judge for postponing decision on a class certification motion received substantial media coverage, including counsel's comment that the court's delaying the class certification motion until after decision on the standing motion was contrary to an earlier decision of the court. In response, the judge wrote to a newspaper explaining and defending her action. A week later, another article appeared in the newspaper containing an interview with the judge wherein she again defended her action in postponing decision on the class certification motion, including comparing the case at issue to the earlier case,

and defending the decision to defer the class action motion by commenting that the present case was more complex than the earlier case. Recusal was ordered by the Court of Appeals because the case was one of "significant local concern," "where tensions may be high," 244 F.3d at 169; because the judge's twice reaching out to the press to defend her rulings might be seen "as expressing an undue degree of interest in the case," *id.* at 170; and because the judge's comments were open to misinterpretation in providing defendants "with a ready-made argument with which to distinguish the instant case from [the earlier case]," "suggest[ing] that [plaintiffs'] claims for certification and temporary injunctive relief were less than meritorious," "and signal[ling] that relief was unlikely to be forthcoming," *id.* at 167. Like *Microsoft*, *Boston's Children* is so factually dissimilar from the present case as to be irrelevant.

### Conclusion

Having "carefully weigh[ed] the policy of promoting public confidence in the judiciary against the possibility that those questioning [my] impartiality might be seeking to avoid the adverse consequences of [my] presiding over their case," *Drexel*, 861 F.2d at 1312, I find that movants have not carried their substantial burden of showing that a reasonable observer, with knowledge and understanding of the relevant facts, would "entertain significant doubt that justice would be done absent recusal," *Lauersen*, 348 F.3d at 334, based upon the Presentation at the BNA seminar. Accordingly, movants' motion to disqualify is denied.

SO ORDERED.