# United States Court of Appeals
## For the First Circuit

No. 06-2230

IN RE: RENÉ VÁZQUEZ-BOTET,

Petitioner.

ON PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Selya and Howard,
Circuit Judges.

Howard Srebnick, with whom Black, Srebnick, Kornspan & Stumpf, P.A., and Edgar Vega-Pabón were on petition for writ of mandamus, for petitioner.
Michael Férrara, Trial Attorney, Public Integrity Section, Criminal Division, U.S. Department of Justice, with whom Alice S. Fisher, Assistant Attorney General, Criminal Division, Edward C. Nucci, Acting Chief, and Mary K. Butler and Matthew C. Solomon, Trial Attorneys, Public Integrity Section, were on opposition to petition for writ of mandamus, for respondent.

September 20, 2006

**Per Curiam**. Petitioner René Vázquez-Botet, who is awaiting trial on charges of conspiracy, fraud, and extortion, seeks a writ of mandamus ordering the recusal of the presiding district court judge. Because the scheduled start of trial was imminent, this court expedited the hearing on this petition. We then issued a judgment on September 14, 2006 (the day after oral argument), denying the mandamus petition and indicating that an opinion would follow. This is that opinion. In it, we set forth our reasons for withholding relief from petitioner.[1]

## Background

This is the second recusal-based mandamus petition to emerge from the underlying criminal proceedings. Earlier this year, upon request of the government, this court ordered the replacement of the original judge in the case. See In re United States, 441 F.3d 44 (1st Cir.), petition for cert. filed, 75 U.S.L.W. 3065 (U.S. July 31, 2006) (No. 06-166). While dismissing accusations of actual bias, we there agreed that, because of the manner in which an investigation into alleged grand jury improprieties was being conducted, the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). On remand, the case was randomly reassigned to Chief Judge Fusté on May 16, 2006, who has scheduled the start of trial for September 26, 2006. In a

---

[1] The judgment also provided that any petition for panel rehearing or en banc review was to be filed no later than fourteen days from the date of this opinion.

-2-

recent filing, the parties estimated that trial would take two to three weeks.

The instant petition relies on an entirely different set of allegations. They center on the fact that Chief Judge Fusté's wife, Rachel Brill, is a practicing attorney who has had some involvement with matters tangential to this criminal case. With co-counsel, she has represented Gregory Laracy--a subject of the investigation and an unindicted coconspirator. Laracy was an officer of one of the local contractors that allegedly made extortionate payments. In May 2003, after several earlier meetings with the government, Brill negotiated a proffer agreement providing Laracy with immunity for his testimony. Petitioner asserts that Laracy, while being represented by Brill, testified before one or more of the grand juries involved in the underlying investigation. The government describes him as a potential prosecution witness at trial. Brill's representation of Laracy mostly involved events occurring over three years ago, and she entered no appearance in any criminal or civil case in connection therewith. She states that she last billed Laracy in October 2003 and does not expect to do so in the future. There is, however, no formal indication that such representation has been terminated.

Brill also has represented José Ventura--another local contractor who was not involved in the crimes charged here but who pled guilty to a similar offense in 2002. The government

-3-

originally contemplated calling Ventura as a "404(b) witness" to describe other bad acts allegedly committed by petitioner, see Fed. R. Evid. 404(b), but it has now announced that it will not do so. For present purposes, the circumstances surrounding Brill's representation of Ventura remain relevant primarily because of two documents that she drafted on his behalf. One publicly accused petitioner, through counsel, of trying to "intimidate" Ventura. The other privately charged that petitioner may have "once again" attempted to "extort money" from Ventura; it also advised that the prosecution would be notified of the possibility that petitioner had thereby violated his bail conditions.[2]

---

[2] The first document was a motion for sanctions, filed by Brill in February 2004 in a criminal case. See United States v. Rivera Rangel, 396 F.3d 476 (1st Cir. 2005). Ventura testified at that trial as a government witness. Defendant Rivera was represented by Attorney Edgar Vega-Pabón ("Vega"), who has also been serving as one of petitioner's attorneys here. While the Rivera case was on appeal, Vega filed a motion charging, inter alia, that Ventura had committed perjury and violated his plea agreement. Brill responded with a request for sanctions. Referring to Vega's simultaneous representation of petitioner, she suggested at one point that "the efforts to intimidate Mr. Ventura are intended to reach beyond the interests of Ms. Rivera." Neither motion was ever acted on by the district court.

The second document was a letter sent by Brill to petitioner's attorneys in December 2004. It responded to a letter petitioner had sent to Ventura, in which he supposedly sought a $10 million payment for alleged slander committed by Ventura while testifying at several judicial and legislative proceedings. Citing a statutory privilege, Brill deemed this request "laughable" and possibly "extort[ionate]." There is no indication that the prosecution, upon receiving such correspondence from Brill, took any action. Petitioner's counsel made Brill's letter public by appending it to his motion to recuse.

-4-

According to petitioner, these circumstances require Chief Judge Fusté's recusal under four separate provisions of 28 U.S.C.:

- § 455(a), because his impartiality "might reasonably be questioned";

- § 455(b)(4), because he or Brill has "a financial interest in the subject matter in controversy" or some "other interest that could be substantially affected by the outcome of the proceeding";[3]

- § 455(b)(5)(ii), because Brill "[i]s acting as a lawyer in the proceeding"; and

- § 455(b)(5)(iv), because Brill "[i]s to the judge's knowledge likely to be a material witness in the proceeding."

Rejecting petitioner's request for an evidentiary hearing before a different judge, Chief Judge Fusté issued a detailed opinion examining each provision separately and concluding that none of them warranted his recusal. Petitioner seeks to overturn this ruling by way of the instant mandamus petition.

## Discussion

A district judge's refusal to recuse, although "[o]rdinarily" reviewable only on appeal from final judgment, In re Martinez-Catala, 129 F.3d 213, 217 (1st Cir. 1997), can sometimes present "an extraordinary situation suitable for the exercise of our mandamus jurisdiction," In re United States, 666 F.2d 690, 694

---

[3] See also 28 U.S.C. § 455(b)(5)(iii) (spouse is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding").

(1st Cir. 1981); accord In re United States, 158 F.3d 26, 30 (1st Cir. 1998). "[T]he standards for issuance of the writ are high": petitioner must make "a showing of both clear entitlement to the requested relief and irreparable harm without it, accompanied by a favorable balance of the equities." In re Cargill, Inc., 66 F.3d 1256, 1260 (1st Cir. 1995). "[I]n recusal cases, mandamus is almost always withheld ... unless the petitioner demonstrates that it is clearly entitled to relief." In re Martinez-Catala, 129 F.3d at 218 (internal quotation marks omitted). But mandamus is a "discretionary writ," and "even where the merits clearly favor the petitioner, relief may be withheld for lack of irreparable injury or based on a balance of equities." Id. at 217. At bottom, "mandamus requires a case not merely close to the line but clearly over it." Id. at 221.[4]

This is not such a case. We stop short of reaching any definitive resolution of the recusal issue, preferring to leave that question open "for resolution on an end-of-case appeal," In re Cargill, Inc., 66 F.3d at 1261, should petitioner be found guilty and thereafter choose to pursue an appeal. For present purposes,

---

[4] When mandamus is sought by the government in a criminal case, these exacting requirements are relaxed and an abuse of discretion standard is instead applied, due to the government's inability to press an end-of-case appeal. See, e.g., In re United States, 158 F.3d at 30-31; see also In re Boston's Children First, 244 F.3d 164, 167 n.6 (1st Cir. 2001). The earlier mandamus petition in this case was adjudicated under this more lenient standard. See In re United States, 441 F.3d at 56.

it suffices to say that no "clear and indisputable" right to relief has been established--i.e., "that the issue is sufficiently clouded that petitioner's eventual entitlement to the requested redress--the district judge's recusal--is problematic." Id. at 1262 (footnote omitted). We explain briefly.

First: Mandamus relief is not warranted based on the allegation that, under § 455(b)(4), Chief Judge Fusté (or Brill, for that matter) has either a "financial interest" at stake or some other interest that could be substantially affected by the case's outcome. Petitioner makes much of the hourly fees paid to Brill by Laracy; indeed, his request for an evidentiary hearing below focused mostly on financial matters. Notably absent, however, is any explanation of how Brill's receipt of such fees could possibly be affected by the judge's rulings or the jury's verdict. More generally, petitioner has not argued that a lawyer/client relationship falls within § 455(d)(4)'s definition of "financial interest." And while he suggested below that Laracy would be eligible for restitution in the aftermath of this case, the government has since announced that no such relief will be sought on Laracy's behalf.

Petitioner also insists that Brill has an interest in his conviction because of its possible impact on future litigation. He contends that if he were to be convicted, if Laracy were then to file a damages action against him, and if Brill were retained to

-7-

pursue that action, she could argue that petitioner is estopped from relitigating facts set forth in the indictment. The district court rejected this contention on the ground that the alleged interest was "too remote, speculative, and contingent" to be one that might be substantially affected by the case's outcome. In re Kansas Pub. Emp'ees Ret. Sys., 85 F.3d 1353, 1362 (8th Cir. 1996). It is enough here to acknowledge the obvious: that this conclusion is not clearly misplaced. Cf. Sensley v. Albritton, 385 F.3d 591, 600 (5th Cir. 2004) (rejecting § 455(b)(4) argument constructed by "layering several speculative premises on top of one another to reach a speculative conclusion").

Second: The charge that Brill "[i]s acting as a lawyer in the proceeding" under § 455(b)(5)(ii) does not provide a basis for mandamus relief. Courts have held that, while an attorney need not be "enrolled as counsel" of record in order to fall within this provision, McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1260 (5th Cir. 1983), the attorney must at least "actually participate[] in the case," id.; accord S.J. Groves & Sons Co. v. Int'l Bhd. of Teamsters Local 627, 581 F.2d 1241, 1248 (7th Cir. 1978). Here, there is no prospect of any future participation by Brill; in accordance with a standing order issued in 1990, Chief Judge Fusté has declared that she is foreclosed from appearing as an attorney "in any proceeding" before him. That standing order would, of

course, prohibit her from representing Laracy in this case, even if she were inclined to do so.[5]

Petitioner emphasizes the fact that Brill negotiated the immunity agreement for Laracy. Yet those events occurred over ten months before this criminal case was initiated (the original indictment was returned on April 8, 2004). Even though the word "proceeding" is defined to include "pretrial, trial, appellate review, or other stages of litigation," 28 U.S.C. § 455(d)(1), Chief Judge Fusté was not clearly mistaken in confining his attention here "to the litigation encompassed by this indictment."[6]

Nor does Brill's authorship of the December 2004 letter to petitioner's counsel--the one post-indictment event cited by petitioner in this regard--call for a different result. As petitioner sees it, Brill was there serving as "the advocate for Ventura in favor of petitioner's incarceration." Even under that arguably hyperbolic view, it is not immediately apparent how Brill

---

[5] Petitioner notes one court's expression of reluctance "to encourage a lawyer's withdrawal as a substitute for the judge's disqualification." S.J. Groves & Sons, 581 F.2d at 1248-49. Yet the concern there was about possible "hardship to the client of the withdrawing firm." Id. We perceive no such hardship should Laracy--a non-party, potential witness--be required for whatever reason to consult other counsel.

[6] Petitioner also suggested below that Brill's representation of Laracy before the grand jury would qualify. Yet because the grand jury "is not an arm of the district court," In re United States, 441 F.3d at 57, it is doubtful that the grand jury falls within the definition of "proceeding." In any event, petitioner has not pursued that argument before this court.

-9-

would thereby be converted into a lawyer "acting ... in the proceeding." She sent the letter in response to a private communication from petitioner involving events not directly related to this case, see supra n.2, and it was petitioner rather than Brill who made the letter public by filing it in court.

Third: The argument that Brill is "likely to be a material witness in the proceeding" under § 455(b)(5)(iv) is based on Giglio v. United States, 405 U.S. 150 (1972). The parties agree that, pursuant thereto, the events surrounding the negotiation of Laracy's immunity agreement constitute material evidence. In petitioner's view, cross-examination of Laracy will not permit adequate exploration of these matters, and Brill's testimony will thus be necessary, for several reasons. First, although Brill voiced the expectation that Laracy would receive both direct and derivative use immunity, the agreement ended up conferring only the latter. Second, Brill had various conversations with the government in Laracy's absence. And third, because the Public Integrity Section of the Department of Justice took control of the case after the immunity agreement was reached with the local U.S. Attorney's office, Brill's testimony is allegedly needed to confirm that the new prosecutors will abide by its terms. The government has responded to these points (e.g., by arguing that the running of the limitations period has sharply reduced Laracy's criminal exposure, and that conversations held in Laracy's absence could not

-10-

affect his bias or credibility).  The parties have debated the extent to which the attorney/client privilege would apply.  And Chief Judge Fusté has dismissed petitioner's argument as "disingenuous."

We do not find petitioner's reasoning sufficiently compelling to satisfy the demanding mandamus standards.  We are also disinclined to address these matters in the abstract, on the basis of speculative scenarios about what may or may not transpire at trial.  (It is conceivable, for example, that the government will decide not to put Laracy on the stand.)  We instead think it advisable to await an end-of-case appeal, should one ensue, in which any argument along these lines can be pursued on the basis of an established record.

Fourth:  Finally, petitioner invokes § 455(a).  Disqualification is appropriate under this provision "only when the charge is supported by a factual basis, and when the facts asserted provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality."  In re Boston's Children First, 244 F.3d 164, 167 (1st Cir. 2001) (footnote and internal quotation marks omitted).  "While doubts ordinarily ought to be resolved in favor of recusal,... the challenged judge enjoys a margin of discretion."  In re United States, 158 F.3d at 30.

The government, in opposing petitioner's § 455(a) argument, thinks it enough that § 455(b) is not implicated and that there is no controlling authority on point. Yet even if the § 455(b) claims were properly dismissed (a matter we do not ultimately resolve), subsection (a) can require recusal "in some circumstances where subsection (b) does not." Liteky v. United States, 510 U.S. 540, 553 n.2 (1994). Nor can petitioner's concerns in this regard be deemed frivolous. It is not entirely fanciful, for example, to suppose that an informed observer might infer that, by representing Laracy, Brill was vouching for his character or credibility. Nonetheless, we agree with the government that this is not the sort of case or circumstance for which mandamus relief is appropriate.

## Conclusion

We need go no further. The underlying criminal case has now been pending for over 29 months. Chief Judge Fusté complied with our earlier directive that the case be "promptly set for trial." In re United States, 441 F.3d at 68. Given these circumstances, given the demanding mandamus requirements, and given petitioner's right "to raise [his] claim of error, if [he] so chooses, in an end-of-case appeal," In re Cargill, Inc., 66 F.3d at 1264 (footnote omitted), we find the concerns raised here to be insufficient to justify further delay. It is for these reasons that we have denied the petition.

-12-